UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LARRY JOE DAVIS, JR., an individual,

    Plaintiff,

v.

AVVO, INC., a Washington corporation, d/b/a Avvo.com,

    Defendants.

CASE NO. C11-1571RSM

ORDER ON SPECIAL MOTION TO STRIKE, PURSUANT TO RCW 4.24.535

    This matter is before the Court for consideration of a special motion to strike filed by defendant Avvo, Inc. ("Avvo"). Dkt. # 47. This motion is brought pursuant to Washington's "anti-SLAPP" law, RCW 4.24.525.[1] Plaintiff has opposed the motion. After careful consideration of the record and the parties' memoranda, the Court has determined for the reasons set forth herein that the motion shall be granted.

## BACKGROUND

---

[1] "SLAPP" in the statutory context is an acronym for Strategic Lawsuits Against Public Participation. In passing RCW 4.24.525, the legislature expressed a concern over lawsuits "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." RCW 4.24.525, Notes, 2010 c 118. The statute provides for the rapid resolution of a special motion, filed by the defendant, to strike the SLAPP.

ORDER - 1

Plaintiff Larry Joe Davis, Jr., is a Florida attorney, board-certified in Health Law. According to the website of the Florida State Bar Association, board certification is a program by which licensed attorneys may become recognized for special knowledge, skill and proficiency in a designated area of practice.[2] The certification process involves earning a passing grade on an examination, peer review assessment, and satisfaction of the certification area's continuing legal education requirements. A Florida attorney who is board certified may use the designation "Board Certified," "Expert," or "Specialist." *Id*.

Defendant Avvo operates a website that provides profiles of many lawyers, doctors, and dentists in the U.S., including area of practice or specialty, disciplinary history, experience, peer endorsements, and client or patient reviews. The lawyer section of the website is searchable by area of practice and location.[3] The information is gathered from publicly available material, including state bar associations, state courts, and lawyers' and firms' websites. Declaration of Joshua King, Dkt. # 9, Exhibit 16. The profile contains an Avvo numerical rating (zero to ten), calculated mathematically from information in the lawyer's profile, including years in practice, disciplinary actions, professional achievements, and industry recognition. *Id*., Exhibit 25. The rating is intended to guide the public in finding a suitable qualified lawyer. *Id*., Exhibit 3. An attorney cannot change his rating by request to Avvo, but he or she may register on the Avvo website, "claim" his or her profile, and update information regarding work experience, practice areas, and professional achievements, any of which may change the rating. *Id*. Clients may submit reviews, which may also change the rating.

Plaintiff filed this action for libel and violation of two Florida statutes in Florida state court on August 26, 2010. Dkt. # 2. He asserted in that complaint that he first learned of his Avvo profile and rating on August 19, 2010, when a prospective client called him to ask for help with an employment issue involving a hostile environment claim. Complaint, Dkt. # 2, ¶ 9. She told plaintiff she called him because he was the "lowest rated employment lawyer" and she assumed he would be "desperate for

---

[2] http://www.floridabar.org/divcom/pi/certsect.nsf/certifications, accessed on March 22, 2012.

[3] http://www.avvo.com/find-a-lawyer?ref=homepage accessed on March 22, 2012.

ORDER - 2

employment." *Id*., ¶ 11.

Plaintiff informed the caller that he was not a "low-ranking employment lawyer" but rather a Board Certified health law attorney, and declined to represent her. *Id*., ¶ 12. After concluding the telephone call, plaintiff visited the Avvo.com website and saw that his practice area was depicted by a "pie chart" which stated "100% employment/labor law." He then went to log on to his profile page and "attempt to correct the misinformation, which included an incorrect business address and blatantly incorrect practice area." *Id*., ¶ 14. He alleges that after "participating in the Avvo.com website," he saw his rating go from 4.3 to 5.0. *Id*., ¶ 15. Then, over the next several days, he attempted to "delist" himself from the website entirely, but was unable to do so. *Id*., ¶ 16. As a result of his efforts, according to plaintiff, his rating dropped to 3.7, accompanied by a "caution" in red letters. *Id*. Plaintiff has provided "screen shots" of other attorneys' profiles, but none of his own to demonstrate these changes. Declaration of Larry Joe Davis, Jr., Dkt. # 20, Exhibits 1, 2, 3. The Court notes that at this time, plaintiff's profile page displays no photograph, and shows a rating of 4.4, a "concern" in red letters, together with the statement, also in red, that "this lawyer has been disciplined by a state licensing authority," together with a link to more information regarding the disciplinary action.[4] Plaintiff's area of practice is still listed on his profile as "100% employment/labor" despite the fact that he has the power to change that entry. There are two very positive five-star client reviews.

Plaintiff filed an amended complaint shortly after filing the original, and served a copy on defendant on September 14, 2010. Dkt. # 3. The amended complaint changed the date that plaintiff learned of his Avvo profile and low rating to August 17, 2010, deleted the causes of action for libel, and added a claim of invasion of privacy/false light. Dkt. # 3. The action was removed to the United States District Court for the Middle District of Florida on October 19, 2010, on the basis of the parties'

---

[4] http://www.avvo.com/attorneys/33701-fl-larry-davis-1295960.html accessed on March 22, 2012.

ORDER - 3

diversity.[5] Dkt. # 1.

After defendant filed a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.Proc. 12(b)(6), plaintiff filed a Second Amended Complaint. Dkt. ## 8, 12. The Second Amended Complaint was stricken by the court for failure to obtain leave of court before filing, as required by Fed.R.Civ.P. 15(a)(2). Dkt. # 14. Defendant then moved pursuant to 28 U.S.C. § 1404(a) to transfer the action to this district pursuant to a forum selection clause on the Avvo.com website, and other factors. Dkt. # 15. Before the court ruled on the motion to transfer, plaintiff sought leave to amend his complaint a third time. Dkt. # 21. The motion was granted, and plaintiff filed his Third Amended Complaint on April 25, 2011. Dkt. # 26. The Third Amended Complaint, which is now the operative complaint in this case, asserts three causes of action under Florida law regarding the alleged misrepresentation of plaintiff's address and practice area, and the use of his photograph in his profile. He does not challenge his rating or the mention of disciplinary action.

After the Third Amended Complaint was filed, defendant filed, in rapid succession, a motion to strike designated paragraphs of the Third Amended Complaint (Dkt. # 30), a motion to dismiss for lack of subject matter jurisdiction and/or failure to state a claim (Dkt. # 31), and a renewed motion to transfer venue to the Western District of Washington (Dkt. # 32). The motion to transfer was granted and the case was transferred to this Court on September 29, 2011. Dkt. ## 43, 44. The Florida district court specifically found that plaintiff, a licensed and board-certified attorney, agreed to the Terms of Use on the Avvo.com website, including the forum selection clause, when he registered and logged in to update his profile. Order, Dkt. # 43, p. 7.

After transfer, defendant did not renew the previously-filed motion to strike and motion to dismiss for lack of subject matter jurisdiction in this Court. Instead, on November 2, 2011, defendant

---

[5] Although the amended complaint did not plead a sum certain as damages, defendant met the burden on removal of establishing that the jurisdictional amount of $75,000 has been met by pointing to a settlement demand for $145,000 (with an apology) or $175,000 (without an apology) presented by plaintiff after he filed suit. Notice of Removal, Dkt. # 1. A defendant may use the amount demanded by the plaintiff as settlement as evidence that the amount in controversy exceeds the jurisdictional minimum. *Conn v. Petsmart, Inc.,* 281 F. 3d 837, 840 (9th Cir. 2002). Plaintiff's demand was not clearly excessive in light of the fact that his amended complaint includes requests for actual damages, punitive and exemplary damages, and statutory attorneys fees on four separate claims. Dkt. # 3.

ORDER - 4

1  filed the motion to strike the complaint pursuant to RCW 4.24.525 that is currently before the Court for
2  consideration. This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332(a)(1).

DISCUSSION

**I. Legal Standard**

The Washington anti-SLAPP Act is intended to address lawsuits brought primarily to chill the valid exercise of the constitutional rights of free speech and petition for redress. The legislature found that it is in the public interest for citizens to participate in matters of public concern, and to provide information on public issues that affect them without fear of reprisal through abuse of the judicial process. RCW 4.24.525; Senate Bill 6395, Laws of 2010, Ch. 118, § 1.

The law provides, in relevant part, that "[a] party may bring a special motion to strike any claim that is based on an action involving public participation" as defined in the statute. RCW 4.24.525(4)(a). The section applies to "any claim, however characterized, that is based on an action involving public participation and petition." RCW 4.24.525(2). An action involving public participation includes "[a]ny oral statement made . . . in a place open to the public or a public forum in connection with an issue of public concern" and "other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public concern. . ." RCW 4.24.525(2) (d) and (e).

An anti-SLAPP law provides relief to a defendant which is in the nature of immunity from suit. *Batzel v. Smith*, 333 F. 3d 1018, 1025 (9th Cir. 2003) (addressing California's anti-SLAPP statute.) In passing the law, the Washington legislature noted concern regarding both the chilling effect on the valid exercise of the constitutional right of freedom of speech, and the chilling effect of "the costs associated with defending such suits." RCW 4.24.525, notes 2010 Ch. 118. The statute accordingly provides for an award of attorneys' fees and costs, plus a statutory award of $10,000, to a defendant who prevails on an anti-SLAPP motion. RCW 4.24.525(6)(a)(i), (ii). Conversely, if the Court finds that the anti-SLAPP motion to strike was frivolous or brought solely to cause unnecessary delay, costs, attorneys' fees, and $10,000 shall be awarded to the opposing party. RCW 4.24.525.(6)(b)(i), (ii). The special motion to strike is therefore not without risk to the moving party.

To prevail on the special motion to strike, the defendant bears the initial burden of showing, by a

ORDER - 5

preponderance of the evidence, that the plaintiff's claim is based on an action involving public participation or petition. If this burden is met, the burden shifts to the plaintiff to establish, by clear and convincing evidence, a probability of prevailing on the claim. If the plaintiff meets this burden, the motion to strike will be denied. RCW 4.24.525.(4)(b).

**II. Analysis**

The Court has no difficulty finding that the Avvo.com website is "an action involving public participation," in that it provides information to the general public which may be helpful to them in choosing a doctor, dentist, or lawyer. Further, members of the general public may participate in the forum by providing reviews of an individual doctor or lawyer on his or her profile page. The profile pages on the Avvo.com website constitute a "vehicle for discussion of public issues . . . distributed to a large and interested community." *New York Studio, Inc. v. Better Business Bureau of Alaska, Oregon, and Western Washington*, 2011 WL 2414452 at *4 (W.D.Wash. June 13, 2011). Therefore the burden shifts to plaintiff to show, by clear and convincing evidence, a probability of prevailing on his Florida state law claims.

Before turning to plaintiff's claims, the Court must consider his assertion that this motion is untimely. He contends that since the Third Amended Complaint was filed and served on April 25, 2011, the deadline to file this motion was June 26, 2011, pursuant to RCW 4.24.525(5)(a). The cited section states, in relevant part, "The special motion to strike may be filed within sixty days of the service of the most recent complaint, or, in the court's discretion, at any later time upon terms it deems proper." RCW4.24.525(5)(a). The use of the term "may" instead of the mandatory "shall" means that this is not a firm deadline to be applied in all cases. In light of the fact that the action was not transferred to this Court until September 20, 2011, the Court finds that the November 2, 2011 filing is timely.

Plaintiff's Third Amended Complaint asserts three causes of action under Florida law: (1) false advertising, in violation of Fla. Stat. § Section 817.41; (2) unauthorized use of a likeness for a commercial purpose, in violation of Fla. Stat. § 540.08; and (3) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204 ("FDUTPA"). Third Amended Complaint, Dkt. # 26, pp. 10-12. Defendant asserts, in the first instance, that Washington law, not Florida law, applies to all

ORDER - 6

of plaintiff's claims, because he specifically agreed to that under the Terms of Use when he registered on the Avvo.com website.

The Terms of Use agreement states, in relevant part, that

> These Site Terms and your use of the Site shall be governed by and construed in accordance with the law of the State of Washington applicable to agreements made and to be entirely performed within the State of Washington (even if your use is outside the State of Washington), without resort to its conflict of law provisions. You agree that with respect to any disputes or claims . . . any action at law or in equity arising out of or relating to the Site or these Site Terms shall be filed only in the state and federal courts located in King County, Washington. . . .

Declaration of Joshua King, Dkt. # 16, ¶¶ 3-9, Exhibit 1. As noted above, the district court in Florida held that plaintiff is bound by the Terms of Use when it enforced the forum selection clause. The court also addressed the enforceability of the choice of law provision, noting that

> Washington and Florida courts review the enforceability of choice of law provisions under a standard similar to that set forth in Section 187 of the Restatement (Second) of Conflict of Laws (*i.e.*, whether a choice of law clause would violate the public policy of the state with the materially greater interest).

Order of Transfer, Dkt. # 46, p. 8 (*citing In re DirecTV Early Cancellation Litigation*, 738 F. Supp. 2d 1062, 1088-90 (C.D.Ca. 2010)). The court found that the Washington Consumer Protection Act, RCW 19.86.020 (WCPA), and the FDUTPA are "substantially similar," and that even if this Court were to apply the WCPA to plaintiff's claims, and "assuming that the WCPA is more restrictive than the FDUCPA," the enforcement of the forum selection clause would not deprive plaintiff of his day in court. *Id*.

This Court applies the choice-of-law principles of the transferor court. *Shannon-Vail Five, Inc., v. Bunch*, 270 F. 3d 1207, 1210 (9th Cir. 2001). Florida law holds that contractual choice of law provisions are presumptively valid. *Gaisser v. Portfolio Recovery Associates, LLC*, 593 F. Supp. 2d 1297, 1300 (S.D.Fla. 2009). "Florida enforces choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." *Mazzoni Farms, Inc., v. E.I. DuPont de Nemours & Co.,* 761 So. 2d 306, 311 (Fla. 2000). Nowhere does plaintiff argue that analysis of his claims under Washington law would contravene strong public policy. He simply contends that "section 501.211 [of

ORDER - 7

the Florida Statues] is not waivable by any [Terms of Use]." Plaintiff's Response, Dkt. # 6.[6] That assertion is not responsive to the choice of law question. Further, the Florida district court's determination that the WCPA and FDUTPA are substantially similar,[7] and that application of Washington law would not be unfair to plaintiff, constitutes a finding that such application would not contravene strong public policy. This Court therefore finds that the choice-of-law clause is enforceable, and that the WCPA, not the FDUTPA shall apply to plaintiff's claims.[8]

The WCPA's citizen suit provision states that "[a]ny person who is injured in his or her business or property" by a violation of the act may bring a civil suit for injunctive relief, damages, attorney fees and costs, and treble damages. RCW 19.86.090. To prevail on a private WCPA claim, plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to the plaintiff's business or property, and (5) causation. *Panag v. Farmers Insurance Co. of Washington*, 166 Wash. 2d 27, 37 (2009) (*citing Hangman Ridge Stables, Inc., v. Safeco Title Insurance Co.,* 105 Wn. 2d 778, 784 (1986). The causation element may be met by demonstrating that the deceptive acts "induced the plaintiff to act or refrain from acting," and the plaintiff's damages were "brought about by such action or failure to act." *Fidelity Mortgage Co. v. Seattle Times Co.*, 131 Wash. App. 462, 468-69 (2005).

In the Third Amended Complaint, plaintiff identifies the deceptive acts or practices as the misrepresentation of his practice area, together with the misappropriation of his image and placement on his profile page. He claims that his listing on the website was "deceptive to the public, to consumers, to

---

[6] Section 501.211 provides a private right of action under the FDUTPA to "anyone aggrieved by a violation of this part." Fla.Stat. § 501.211(1).

[7] The court compared Fla.Stat. § 501.204(1), which prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce" with RCW 19.86, which prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Order of Transfer, Dkt. # 43, p. 8.

[8] Treating plaintiff's claims under the WCPA instead of the FDUTPA is not prejudicial to plaintiff in terms of the ruling on this motion to strike. The private right of action under the FDUTPA is tempered by a provision requiring the plaintiff to post a bond to indemnify the defendant for damages, including attorney's fees, in the event the action is found to be frivolous, lacking in legal or factual merit, or brought for the purpose of harassment. Fla.Stat. 501.211(3).

ORDER - 8

other lawyers, and specifically to the potential client referenced herein." Third Amended Complaint, Dkt. # 26, ¶ 43. He asserts that this misrepresentation of his practice area is an attempt by Avvo.com to "coerce lawyers by illegal and tortious conduct, on an epidemic scale, to correct mislistings" and is "an actionable trade practice." *Id*., ¶ 41.

As noted by the Florida district court, both the WCPA and the FDUTPA require that the deceptive act occur in trade or commerce. This Court has previously held that Avvo.com does not engage in "trade" or "commerce." *John Henry Browne v. Avvo, Inc.*, 525 F. Supp. 2d 1249, 1254 (W.D.Wash. 2007).

> "Trade" and "commerce" are defined as "the sale of assets or services. . . . Avvo collects data from public sources, attorneys, and references, rates attorneys (where appropriate), and provides both the underlying data and the ratings to consumers free of charge. No assets or services are sold to people who visit the site in the hopes of finding a lawyer and no charge is levied against attorneys or references who choose to provide information. It is hard to imagine how an information clearinghouse and/or ratings service could be considered "commerce". . . . Instead, plaintiffs argue that Avvo's offer to sell advertising space to attorneys transforms all of defendants' activities into trade or commerce. The advertising program is separate and distinct from the attorney profiles that are the subject of plaintiffs' complaint.

*Id*. The Court ruled that "Avvo's publication of information and ratings based on available data is not 'trade or commerce' and cannot form the basis of a CPA claim." *Id*.

Plaintiff seeks to distance his claim from this result by asserting that "[i]n the *Browne* opinion, this Court stated at 1254 that the placement of paid advertising in a free listing of brokerage rates would make such list commercial speech." Plaintiff's Response, Dkt. # 50, p. 8 (*citing Fidelity Mortgage Corp. v. Seattle times Co*., 131 Wash. App. at 470. This statement mischaracterizes the ruling in *Browne*. Referring to *Fidelity Mortgage*, the Court stated that "the court found that a newspaper's publication of mortgage rates from various lenders was not, in the absence of payment from the lenders, trade or commerce. On the other hand, the same rate chart could be considered trade or commerce if the newspaper accepted an advertising fee in exchange for including a lender in the chart." *Browne*, 525 F. Supp. 2d at 1254. The Court thus distinguished a hypothetical situation where a newspaper accepted a fee for "including a lender in the chart" from the Avvo.com website where the free attorney profiles and the advertising images on the right side of the webpage are "separate and distinct."

ORDER - 9

Plaintiff thus cannot assert a claim under the WCPA for the alleged misrepresentation of his practice area or the use of his image, as these are part of his profile which under *Browne* is not "trade or commerce." However, in his response to the motion to strike, he clarifies that his claim concerns a different "deceptive act or practice" that he contends is related to Avvo's business model. This argument arises from his allegation in the Third Amended Complaint at ¶ 41, noted above, that the misrepresentation of his practice area is an intentional act by Avvo to induce him to register on the website to correct the misrepresentation.[9] "This profile-based content-based ad space is on information and belief, one of two primary revenue generators for Defendants, the other being the Avvo Pro membership (to stop the targeted ads, of course.)" Plaintiff's Response, Dkt. # 50, p. 9. Plaintiff thus contends that lawyers are induced to apply for "Pro" membership to prevent competitor's ads from appearing on their profile pages. He states, "That is, in fact, apparently one of the primary selling points of the Avvo Pro membership." *Id.,* 8. The Court accepts this as plaintiff's statement of the deceptive act or practice which forms the basis of his WCPA claim.

Plaintiff has presented no evidence, let alone clear and convincing evidence, to demonstrate that there is any probablily of prevailing on his WCPA claim. He points to no evidence in the record to support the conclusory allegations regarding Avvo's advertisements. Indeed, he has provided no evidence at all; he has merely "verified" the allegations set forth in his Third Amended Complaint. Affidavit of Larry Joe Davis, Dkt. # 51. A complaint is not evidence. Plaintiff has submitted no separate declaration of facts within his personal knowledge which support his claims, as contemplated under RCW 4.24.525(4)(c) (In determining whether a party has established by clear and convincing evidence a probability of prevailing on a claim, "the court shall consider the pleadings and supporting and opposing affidavits stating the facts.") Instead of presenting an affidavit, plaintiff asserts in his response that "[i]f one were to search on Avvo for a particular well-known lawyer, such as a well-known Board Certified

---

[9] This allegation of an intentional act to "coerce" lawyers contradicts the pleading at ¶ 38 that the mistake is simply the result of careless programming. "Avvo.com's computer program was not designed properly, and in a rush to list and rate '90% of lawyers in the United States' allowed the program to run rampant making reckless mistakes, as was the case here and with the other Board Certified lawyers mentioned herein." Third Amended Complaint, Dkt. # 26, ¶ 38.

ORDER - 10

Health Lawyer, when one is directed to that lawyer's page, one would likely see an advertisement for a competing lawyer, as Plaintiff did in August 2010, which competing lawyer has paid Avvo to have that ad placed on the listed lawyer's page." Plaintiff's Response, Dkt. # 50, p. 9. These speculations as to what "one would likely see," are not evidence. Nor has plaintiff alleged how this allegedly deceptive act of Avvo induced him to act or refrain from acting in some manner, so as to establish causation for his loss. *Fidelity Mortgage Co.,* 131 Wash. App. at 468. Finally, he has not alleged any actual damages caused by the deceptive act.

In his complaint, plaintiff pleads in general terms that "Defendant's actions have damaged Plaintiff individually, as well as many other lawyers in Florida, and Defendant's actions have misled consumers in Florida." Third Amended Complaint, Dkt. # 26, ¶ 51. He requests "actual damages" in addition to declaratory and injunctive relief, but nowhere in the complaint does he state what monetary loss he actually suffered. While plaintiff purports to represent the interests of other Florida attorneys and the general public in this matter, he may only request monetary damages for his own losses.

In his response to the motion to strike, he clarifies that he was "directly damaged by the time wasted on the phone with a potential client that had been misled by the Avvo.com site." Plaintiff's Response, Dkt. # 50, p. 11. He estimates his loss at one-half hour of his time, which he bills at $350 an hour, for a total of $175. He asserts there were other calls, so his damages are "not de minimus or speculative, especially on a massive scale." *Id*. The problem, however, is not that his loss is de minimus, but that it does not flow from the alleged deceptive act. According to the allegations of the complaint, the prospective client called him, and wasted his time, solely because of his profile; she erroneously thought he was a "low-ranking" attorney who practiced "100% employment law." Third Amended Complaint, Dkt. # 26, ¶ 22. Under *Browne*, information on the profile page cannot serve as the basis for a WCPA claim. Plaintiff is fully aware of this, as he seeks to distinguish his consumer fraud claim and escape the *Browne* bar by defining the alleged deceptive act as arising from the advertisements placed on the profile page. Yet he has alleged no damages flowing from that deceptive act. Indeed, it would be contrary to the allegations of the complaint for him to do so, as he alleges that the prospective client called him in spite of the advertisements of other attorneys on his page, not

ORDER - 11

because of them.

Plaintiff has failed to produce any evidence that would demonstrate a probability of prevailing on his WCPA claim. Nor has he brought forth any evidence to support his false advertising and misuse of his likeness claims, or argued any elements of these torts under Washington law. Plaintiff was put on notice by the Order of Transfer that he is bound by the Terms of Use, and as an experienced attorney he should have anticipated that this Court would find him bound by the choice of law provisions therein. Yet he chose to oppose the motion to strike solely under Florida law, and failed to come forward with any evidence to support his claims even under Florida law. As plaintiff has not produced clear and convincing evidence to demonstrate a probability of prevailing on any of his claims, the motion to strike under RCW 4.24.525 shall be granted as to all claims.

## CONCLUSION

Defendant has met the burden under RCW 4.24.525(4)(b) of demonstrating that plaintiff's claims are based on an action involving public participation or petition in an issue of public concern. The burden therefore shifts to plaintiff to show, by clear and convincing evidence, a probability of prevailing on his claim. Plaintiff has failed to produce or point to such evidence. The special motion to strike (Dkt. # 47) is accordingly GRANTED as to all claims, and this action is DISMISSED.

Pursuant to RCW 4.24.525(6)(a)(I) and (ii), defendant as the prevailing party is entitled to costs of litigation and reasonable attorney's fees incurred in connection with each successful motion, together with a statutory award of ten thousand dollars. Defendant shall accordingly make application to the Court for reasonable attorney's fees incurred in bringing the motion to transfer venue (Dkt. # 32) and this motion (Dkt. # 47). Such application shall be filed within three weeks of the date of this Order, and shall be noted on the Court's calendar for the third Friday thereafter so plaintiff may have an opportunity to respond.

//
//
//
//

ORDER - 12

Judgment shall be entered after the Court has determined the amount of reasonable attorney's fees and shall include such amount.

Dated this 28 day of March 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 13